**UNITED STATES**

v.

**Staff Sergeant Daniel J. McDOWELL,
United States Air Force.**

**ACM 34448 (f rev).**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 10 Nov. 2000.

10 Dec. 2003.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Major Terry L. McElyea, and Captain Jennifer K. Martwick.

Appellate Counsel for the United States: Colonel LeEllen Coacher, Lieutenant Colonel Robert V. Combs, and Major Lane A. Thurgood.

Before PRATT, ORR, and GENT, Appellate Military Judges.

**OPINION OF THE COURT UPON
FURTHER REVIEW**

ORR, Judge:

On 7–10 November 2000, the appellant was tried by a general court-martial composed of officer and enlisted members at McGuire Air Force Base, New Jersey. Contrary to his pleas, he was found guilty of indecent acts upon a male under the age of 16 years, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was found not guilty of forcible sodomy with the same child. His adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 3 years, forfeiture of all pay and allowances, and reduction to E–1. The appellant initially raised four issues before this Court. This Court decided those issues adversely to the appellant and affirmed the approved findings and sentence. *See United States v. McDowell,* ACM 34448 (A.F. Ct.Crim.App. 28 Feb 2002) (unpub.op.). The appellant appealed our decision to the United States Court of Appeals for the Armed Forces (CAAF), and raised six new issues. The CAAF decided that it was appropriate for this Court to consider two of the new issues, set aside our previous decision, and remanded the case to us for further consideration in light of its order. *See United States v. McDowell,* 57 M.J. 471 (C.A.A.F. 2002).

On 27 March 2003, this Court determined that we could not resolve the first issue remanded from the CAAF because the action of the convening authority contained a "latent ambiguity." As a result, we set aside the action of the convening authority and ordered the case returned to the convening authority for new post-trial processing and action. On 23 July 2003, the convening authority signed a new action approving the findings and sentence. The convening authority deferred the adjudged forfeiture of $1,005.00 of the appellant's pay per month from 24 November 2000 until action. Additionally, he waived $1,005.00 of the appellant's pay per month of the mandatory forfeitures [1] for a period of six months starting 24 November 2000, and directed that the forfeitures be paid to the appellant's ex-wife and her son.

Once the case was returned to us for further review, the appellant, his counsel and the government were given an opportunity to comment on the convening authority's new action. The appellant took this opportunity to raise one additional error for our consideration. He also reasserted four issues presented to the CAAF, but not previously considered by this Court. First, we will discuss the two issues remanded to us by the CAAF. Then, we will address the appellant's new assignment of errors. We find no error and affirm.

The appellant's first assignment of error before the CAAF was the following:

## I.

WHETHER THIS HONORABLE COURT SHOULD REMAND THIS CASE TO THE AIR FORCE COURT OF CRIMINAL APPEALS TO DISAPPROVE THE ADJUDGED FORFEITURES BEFORE IMPLEMENTING THE WAIVER OF FORFEITURES TO ENSURE THAT THE INTENT OF THE CONVENING AUTHORITY IS SATISFIED WHILE FULFILLING THE REQUIREMENTS OF UNITED STATES v. EMMINIZER, [56 M.J. 441 (C.A.A.F. 2002)].

Since we set aside the action of the convening authority and ordered a new post-trial processing and action, the only remaining question that must be answered to resolve this issue is whether the convening authority's new action is consistent with the requirements of *Emminizer*. The action of the convening authority dated 28 February 2001, in relevant part, states:

> Pursuant to Article 58b, Uniform Code of Military Justice, Section (b), $1,005 pay per month of the required forfeiture of total pay and allowances is waived for a period of 6 months, release from confinement or upon expiration of term of service whichever is sooner from 24 November 2000. The $1,005 pay per month is directed to be paid to [JM], spouse of the accused, for the benefit of herself and the accused's stepson.

As noted at the outset, the appellant's approved sentence included a bad-conduct discharge, confinement and forfeiture of all pay and allowances. As a collateral consequence of this sentence, the appellant was subject to mandatory forfeitures of pay and allowances. Under Article 57(a), UCMJ, 10 U.S.C. § 857(a) the adjudged forfeitures took effect on 24 November 2000, 14 days after the sentence was adjudged. While the convening authority waived the mandatory forfeitures, he did not defer, suspend, or disapprove the adjudged forfeitures. Since the adjudged forfeitures took effect, there were no funds available for the convening authority to waive. Therefore, neither the appellant nor his dependents were entitled to receive pay or allowances after 24 November 2000.[2] *See Emminizer*, 56 M.J. at 444–45.

---

1. Article 58b, UCMJ, 10 U.S.C. § 858b, forfeitures are often referred to by different terminology. The convening authority's action referred to Article 58b, UCMJ, forfeitures as "required" forfeitures. It is also common to see Article 58b, UCMJ, forfeitures referred to as "automatic" forfeitures. We have followed our superior court's terminology in *United States v. Emminizer*, 56 M.J. 441 (2002) and refer to Article 58b, UCMJ, forfeitures as "mandatory" forfeitures.

2. The appellant's wife and stepson were eligible for transitional compensation in the amount of $1,103.00 per month.

In accordance with our order, on 23 July 2003, the convening authority completed a new action. The action in relevant part, states:

Pursuant to Article 57, Section (a)(2), Uniform Code of Military Justice, $1,005.00 pay per month of the adjudged forfeitures were deferred from 24 November 2000 until the date of this action. Pursuant to Article 58b, Section (b), Uniform Code of Military Justice, $1,005.00 pay per month of the mandatory forfeitures were waived for a period of six months or release from confinement or expiration of term of service, whichever is sooner, from 24 November 2000. The $1005.00 pay per month was directed to be paid to [JM], spouse of the accused, for the benefit of herself and the accused's stepson.

In their 18 August 2003 assignment of errors, counsel for the appellant acknowledged that on 23 July 2003, the convening authority properly deferred the adjudged forfeitures before waiving the mandatory forfeitures. As a result, they consider the issue resolved. We agree. Accordingly, we hold that the convening authority's new action is consistent with the decision under *Emminizer*.

The appellant's second remanded issue was:

## II.

WHETHER THE FIFTH AMENDMENT PRIVILEGE AGAINST COMPELLED SELF–INCRIMINATION PREVENTS MIRAMAR NAVAL CONSOLIDATED BRIG FROM ENCOURAGING INCARCERATED SEXUAL OFFENDERS TO PARTICIPATE IN A CLINICAL REHABILITATIVE PROGRAM IN WHICH PARTICIPANTS MUST ACCEPT RESPONSIBILITY FOR THEIR OFFENSES BY CONDITIONING THE AVAILABILITY OF CERTAIN INSTITUTIONAL PRIVILEGES ON PARTICIPATION IN THE PROGRAM.

■ We review this issue de novo. Since the appellant was convicted of a sexual offense, he was encouraged to participate in the Sex Offender Treatment Program (SOTP) at the Miramar Naval Consolidated Brig. According to the SOTP course outline, inmates are eligible to participate in the program if they meet four criteria. First, participants must have at least 26 months of confinement time remaining. Second, they must consent to program guidelines. Third, they must admit some responsibility for their offenses. Additionally, they must be willing to discuss their offenses and sexual behavior. If an inmate meets the four criteria, he or she must then sign a program agreement acknowledging the conditions for successful completion of the program. If an inmate is placed on probation, is suspended, or fails to successfully complete the SOTP, that information is reported to the Clemency and Parole Review Board. If the inmate decides not to participate in the program, the inmate's decision is also reported to the Clemency and Parole Review Board, and the inmate's status is changed from Level II to Level I. This change in status results in the loss of two privileges. Specifically, the inmate may no longer have a watch or a Walkman radio. However, the inmate may still be permitted to participate in Yard Call, Gym Call, Library Call, and Movie Call, play table games, use the computers in the dormitory, and make phone calls during designated hours.

Article 66(c), UCMJ, 10 U.S.C. § 866(c) states that "in a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority." The appellant has not shown that his decision not to participate in the SOTP has affected the findings or sentence in his case. Therefore, we are not convinced that we have jurisdiction to grant him relief. Even if our superior courts determine that we have jurisdiction to resolve this issue, the appellant would not be entitled to relief. In *McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the Supreme Court held that the consequences for nonparticipation in a program such as SOTP do not automatically create a compulsion that encumbers the constitutional right not to incriminate oneself. The Court emphasized that "[t]he privilege against self-incrimination does not terminate at the jail-

house door, but the fact of a valid conviction and the ensuing restrictions on liberty are essential to the Fifth Amendment analysis." *Id.* at 36, 122 S.Ct. 2017 (citing *Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). In *McKune,* the Court looked at the consequences of the inmate's decision not to participate in a sex offender treatment program to determine whether a constitutional violation had occurred. They also acknowledged that running a prison is a difficult undertaking. As a result, the Court reiterated that lower courts should exercise restraint and give deference to appropriate prison authorities. *Id.* at 37, 122 S.Ct. 2017 (citing *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). The Court then set out a test lower courts should use to decide whether a constitutional violation has occurred. "Determining what constitutes unconstitutional compulsion involves a question of judgment: courts must decide whether the consequences of an inmate's choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." *Id.* at 41, 122 S.Ct. 2017.

In *McKune,* the inmate faced the possibility of being transferred from medium to maximum security as a result of his decision not to participate in a sex offender treatment program. The inmate's decision did not increase his sentence or make him ineligible for good time consideration or parole. In comparison to the instant case, the loss of privileges in such a transfer were more onerous than the loss of a watch or a Walkman radio. Since the Supreme Court did not find an unconstitutional compulsion under the facts of the *McKune* case, we do not find one here. Therefore, we hold that the consequences of the appellant's decision not to participate in the SOTP do not violate the Fifth Amendment right against self-incrimination.

The appellant raised the following issue to this Court after the convening authority completed a new action on his case:

## III.

## WHETHER THE STAFF JUDGE ADVOCATE WAS DISQUALIFIED FROM PREPARING THE STAFF JUDGE ADVOCATE'S RECOMMENDATION WHEN THE CASE WAS RETURNED FOR NEW POST–TRIAL PROCESSING.

█ As stated above, this Court returned this case to the convening authority for new post-trial processing because of a latent ambiguity. Both the convening authority and the staff judge advocate who participated in the original action participated in the new post-trial processing. Consequently, the appellant asserts that the staff judge advocate, whom he blames for the ambiguity, should be disqualified. We disagree.

We review this issue de novo. Article 6(c) UCMJ, 10 U.S.C. § 806(c) sets forth the reasons when a person must be disqualified from serving as a staff judge advocate. It states, "No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing or convening authority upon the same case."

Similar language concerning the disqualification of a person to serve as a staff judge advocate is found in Rule for Courts–Martial (R.C.M.) 1106(b). While it is clear that the staff judge advocate did not serve in any capacity that would automatically disqualify him, we also considered the language found in the Discussion of R.C.M. 1106(b). This section also suggests that a staff judge advocate may be ineligible when he or she has other than an official interest in the same case, or must review his or her own pretrial action. Our superior court has defined "other than an official interest" as "a personal interest or feeling in the outcome of a particular case." *United States v. Sorrell,* 47 M.J. 432, 433 (C.A.A.F.1998). We are not convinced that the staff judge advocate had anything other than an official interest in this case.

There is no question that the appellant, the staff judge advocate, and the convening authority all wanted to provide support for the appellant's dependents. The convening authority's first action, dated 28 February 2001,

expressed the convening authority's intent to direct payment of the appellant's forfeitures to his dependents. The advice to the convening authority was consistent with the guidance in *United States v. Owen*, 50 M.J. 629, 631 (A.F.Ct.Crim.App.1998), which held in pertinent part:

> [I]f the sentence of a court-martial includes a partial forfeiture of pay, or forfeiture of all pay and allowances, and otherwise keys Article 58b(a)(1), and the accused requests a waiver which is granted, the convening authority is not required to first disapprove the adjudged forfeiture in order to effect the waiver.

However, in May 2002, the CAAF decided the case of *Emminizer*, thereby overruling the *Owen* case. As a result, the advice the staff judge advocate gave to his convening authority was later determined to be incorrect. It is reasonable to infer that a staff judge advocate might take a personal interest in a case that was returned to his or her convening authority because of an incorrect staff judge advocate recommendation (SJAR). However, the error in this case was the result of a change in the law, not an error caused by the staff judge advocate. Additionally, the second SJAR and action provide financial support for the appellant's dependents and correct the error found in the first action. Therefore, there is no basis to support the appellant's assertion that the staff judge advocate was not objective or impartial when he prepared the new SJAR. Accordingly, we hold that the staff judge advocate was not disqualified from preparing a new SJAR.

Finally, we have reviewed the appellant's alleged errors raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are

AFFIRMED.